**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-61737-DAMIAN/STRAUSS**

**MOUNTAIN VIEW PRODUCTIONS, LLC,**

Plaintiff,

v.

**BG BIG BOAT LTD.,**

Defendant.

_________________________________/

# ORDER DENYING MOTION TO VACATE ATTACHMENT

THIS MATTER came before the Court upon Defendant's Motion to Vacate Attachment [DE 17] (the "Motion"). District Judge Melissa Damian has referred the Motion to me to take all necessary and proper action as required by law. [DE 22] at 1. The parties agreed at the Rule E(4)(f) hearing that the undersigned Magistrate Judge could address the Motion by order rather than by a report and recommendation. I have thus reviewed the Motion, Plaintiff's Response [DE 20], and the parties' arguments and representations at the Rule E(4)(f) hearing held before me on July 20, 2026. For the reasons stated below, the Motion is **DENIED**.

## BACKGROUND

This maritime action arises from an alleged breach of a charter agreement. *See generally* [DE 3]. Plaintiff is a film production company that signed a charter agreement with Defendant, a vessel owner, for the use of Defendant's vessel for film production. *Id.* ¶ 9. Defendant is a company incorporated in the Cayman Islands. *See* [DE 20-1] ¶ 8. Plaintiff contends that Defendant breached the charter agreement. [DE 3] at 7-8. Per an amendment to the charter agreement, the underlying merits of the dispute are subject to arbitration in California. *See* [DE 17-2] at 5.

Plaintiff filed this action in federal court for seizure of Defendant's vessel under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule B"). *See* [DE 3] ¶ 1; Fed. R. Civ. P. Supp. R. B; *see also* 9 U.S.C. § 8 ("If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, . . . the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel . . . according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration . . . ."). The action started as an *in rem* suit against the vessel under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule C"). *See* [DE 1] ¶ 28; Fed. R. Civ. P. Supp. R. C. Plaintiff then amended the complaint by instead suing Defendant directly and seeking maritime attachment and garnishment of the vessel as security under Rule B. [DE 3] at 9-10.

On the same day that Plaintiff amended the complaint, Plaintiff filed an expedited motion for issuance of process of attachment and garnishment. *See generally* [DE 4]. Judge Damian granted that motion and directed the Clerk of Court to issue the summons and process of attachment and garnishment. [DE 5] at 1. The Clerk of Court issued the process of attachment and garnishment, [DE 8] at 1-2, and the United States Marshals Service seized the vessel, [DE 10] at 1.

Defendant, believing that the maritime attachment and garnishment of the vessel under Rule B was improper, filed the Motion, which asks for the Court to vacate the attachment (among other relief). *See* [DE 17] at 9. In the Motion, Defendant had separately asked for the Court to hold a post-seizure hearing under Rule E(4)(f)[1] of the Supplemental Rules for Admiralty or Maritime

[1] "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment

Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule E(4)(f)"). *Id.* The Court held that hearing on July 20, 2026, taking the parties' positions under advisement. *See* [DE 23].

## LEGAL STANDARD

Rule B states:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Fed. R. Civ. P. Supp. R. B(1)(a). Rule B is a "procedural device[] afforded to plaintiffs in order to secure a prejudgment writ of attachment over a defendant's piece of property . . . ." *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1233, 1238 (11th Cir. 2006); *Ital Brokers S.P.A. v. Redbridge Ins. Co.*, No. 24-CV-21614, 2024 WL 4880513, at *2 (S.D. Fla. Nov. 25, 2024). Proceedings under Rule B "are known as 'quasi-in-rem' proceedings, because they are not actions directly against the *res* as a fictitious person, as is the case in *in rem* actions, but are actions against a party who is not personally present in the district but whose property is present." *World Wide Supply OU v. Quail Cruises Ship Mgmt.*, 802 F.3d 1255, 1259-60 (11th Cir. 2015); *see Ital Brokers*, 2024 WL 4880513, at *2 n.1. The two main purposes of Rule B are "to assure a respondent's appearance, and to assure satisfaction in case the suit is successful." *Nehring v. Steamship M/V Point Vail*, 901 F.2d 1044, 1051 (11th Cir. 1990) (quoting *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir. 1982)). Though, a plaintiff may not use Rule B solely to obtain security for the suit. *Nehring*, 901 F.2d at 1051. "Rule B therefore requires, as

---

should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4)(f).

a precondition to its application, that the defendant not be present in the district, but that the defendant's property must be present there." *World Wide Supply*, 802 F.3d at 1262 (11th Cir. 2015). Consequently, to secure a writ of attachment under Rule B, a plaintiff must establish four elements:

> (1) the plaintiff has an *in personam* claim against the defendant; (2) *the defendant cannot be found within the district where the action is commenced*; (3) property belonging to the defendant is present, or soon will be present, within the district; and (4) there is no statutory or general maritime law proscription to the attachment.

*Dannebrog Rederi AS v. M/Y True Dream*, 146 F. Supp. 2d 1307, 1311 (S.D. Fla. 2001) (emphasis added) (citing *W. Bulk Carriers, Pty. Ltd. v. P.S. Intern., Ltd.*, 762 F. Supp. 1302, 1306 (S.D. Ohio 1991)).

Where a defendant challenges the attachment and requests a hearing, as here, the burden is on the plaintiff to establish that reasonable grounds for the attachment existed. *See id.* (citing *Salazar v. Atlantic Sun,* 881 F.2d 73, 79 (3d Cir. 1989)). Many courts require that the plaintiff "come forward with sufficient evidence to show there was probable cause for the arrest or attachment of the vessel." *20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc.*, 992 F. Supp. 1423, 1427 (M.D. Fla. 1997) (citations omitted); *accord Nimbus Boat Rental, Corp. v. Garcel*, No. 22-CV-22645, 2022 WL 11295924, at *5 (S.D. Fla. Oct. 7, 2022), *report and recommendation adopted sub nom. Nimbus Boat Rental, Corp. v. Garcia*, 2022 WL 11207330 (S.D. Fla. Oct. 19, 2022); *see also Nimbus*, 2022 WL 11295924, at *5 ("Probable cause exists when there is '[a] reasonable belief in the existence of facts on which a claim is based and in the legal validity of the claim itself.'" (alteration in original) (quoting *Anderson v. M/Y Dream*, No. 21-60863-CIV, 2021 WL 2435455, at *2 (S.D. Fla. May 12, 2021))). A court must focus its inquiry on the facts known to the plaintiff at the time of the attachment. *Dannebrog*, 146 F. Supp. 2d at 1311.

## ANALYSIS

The parties only dispute the second element for attachment, i.e., whether Defendant could not be found within this district. *See* [DE 17] at 3 ("Plaintiff . . . failed to satisfy that indispensable prerequisite of demonstrating that Defendant cannot be found within the district."); [DE 20] at 4. Courts have created a two-part test for determining whether a defendant cannot be found within the district where the action is brought. *Nehring*, 901 F.2d at 1051 n.6. First, the court must determine whether the defendant was present for purposes of personal jurisdiction. *See id.*; *Tetra Tech Ec, Inc. v. White Holly Expeditions LLC*, No. 10-CV-465-J-32, 2010 WL 3259696, at *5 (M.D. Fla. Aug. 16, 2010); *Dorsett v. Carib-USA Ship Lines, Bahamas Ltd.*, No. 06-80977-CIV, 2007 WL 9701874, at *2 (S.D. Fla. Feb. 21, 2007). Second, the court must determine whether the defendant was present for purposes of service of process. *Nehring*, 901 F.2d at 1051 n.6; *Tetra Tech*, 2010 WL 3259696, at *5; *Dorsett*, 2007 WL 9701874, at *2. To vacate an attachment, the answer to both parts of the test must be yes. *Tetra Tech*, 2010 WL 3259696, at *5. The Court addresses each part in turn.

### I. PERSONAL JURISDICTION

Defendant argues in the Motion that it could have been found in this district for purposes of personal jurisdiction. *See* [DE 17] at 5-6. "Personal jurisdiction can be 'general' or 'specific.'" *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 879 (11th Cir. 2018) (per curiam). At the Rule E(4)(f) hearing on July 20, 2026, Defendant clarified that it is only arguing that Defendant could have been found in this district for purposes of general—not specific—jurisdiction. Plaintiff responds that Defendant's argument on general jurisdiction is self-serving and that whether Defendant was subject to personal jurisdiction was unclear. *See* [DE 20] at 4-5.

Typically, determining whether personal jurisdiction exists over a defendant requires a two-part inquiry: (1) whether personal jurisdiction exists over the defendant under Florida's long-arm statute, and (2) "if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *see also Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1333 (S.D. Fla. 2016) ("The first inquiry for a federal court, whether sitting in diversity or admiralty, is to look to the long-arm statute of the state—here Florida—and the cases interpreting that statute." (citing *Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-CIV-60885, 2015 WL 3970546, at *18 (S.D. Fla. June 30, 2015))). For purposes of general jurisdiction, however, Florida's long-arm statute[2] "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment"; therefore, the Court only needs to determine whether exercising general jurisdiction would exceed the Fourteenth Amendment's limits. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010)).

Under the Fourteenth Amendment's Due Process Clause,[3] "a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims

---

[2] Florida's long-arm statute for general jurisdiction states, "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, *whether or not the claim arises from that activity*." Fla. Stat. § 48.193(2) (emphasis added).

[3] The parties presumed that the Fourteenth Amendment's framework for personal jurisdiction applies when assessing Rule B attachment. Indeed, Defendant built its argument on the Fourteenth Amendment. *See* [DE 17] at 6 ("Defendant's conduct within the district satisfies the requirements set forth for personal jurisdiction under both Florida's long arm statute and the due process clause of the 14th Amendment."). Accordingly, I assume for purposes of this order that the Fourteenth Amendment's framework for personal jurisdiction, rather than the Fifth Amendment's framework, is the one that applies when considering whether Rule B attachment was proper. *Cf. Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1274 n.3 (11th Cir. 2022) ("Because the parties have litigated the

against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citation modified). Corporations are usually only "at home" at their place of incorporation and at their principal place of business. *Id.* (citations omitted). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)); *see, e.g.*, *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 448-49 (1952) (holding that general jurisdiction existed over foreign corporation in Ohio because WWII had forced a temporary relocation of foreign corporation from Philippines to Ohio, where it conducted its activities during the war).

At the outset, the Court addresses Defendant's suggestion at the hearing that personal jurisdiction should operate differently because this case is admiralty-based and the vessel is Defendant's sole asset. Defendant did not provide a case standing for this proposition in the Motion. *See* [DE 17] at 5-6. Regardless, the parties seem to agree that the personal-jurisdiction inquiry for Rule B attachment focuses on "minimum contacts," a concept associated with the Fourteenth Amendment's Due Process Clause. *See Dorsett*, 2007 WL 9701874, at *2; *Tetra Tech*, 2010 WL 3259696, at *5. Under that standard, general jurisdiction does not vary based on the nature of the business. *See BNSF*, 581 U.S. at 414 ("The Fourteenth Amendment due process constraint . . . applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued."). The Court thus applies a traditional analysis for general jurisdiction.

---

personal jurisdiction issue under the Fourteenth Amendment, we do not address the Fifth Amendment's Due Process Clause . . . .").

Here, reasonable grounds existed at the time of attachment for Plaintiff to have concluded that Defendant could not be found in the district for purposes of personal jurisdiction. Defendant argues that it was subject to general jurisdiction in Florida, but the Court is unpersuaded. The first paradigmatic way that Defendant would be subject to general jurisdiction here is if Florida was the place of incorporation. Yet that does not appear to be the case. As sworn to by Plaintiff's counsel, an investigation revealed that Defendant is a corporation formed under the laws of the Cayman Islands. [DE 20-1] ¶ 8, at 2. So the place of incorporation cannot be the basis for general jurisdiction.

The second paradigmatic way that Defendant would be subject to general jurisdiction is if Defendant maintains its principal place of business here. However, it appeared from Plaintiff's counsel's investigation that Defendant maintains a principal address listed in George Town, Cayman Islands. [DE 20-1] ¶ 8, at 2. This information suggests reasonable grounds to believe that Defendant is "at home" in the Cayman Islands, not in this district. This conclusion is reinforced by the fact that Defendant's registered agent for service of process had an address in the Cayman Islands, *id.*, that Defendant is not even registered to do business in Florida, and that Defendant does not have a registered agent for service of process in this state, *id.* ¶ 9. One would imagine that a corporation "at home" in South Florida would at least be registered to do business in the state. And even if Defendant had registered to do business in Florida and maintained a registered agent in the state for service of process, these facts would not give Florida courts general jurisdiction over Defendant. *See Jastrjembskaia v. InCruises, LLC*, No. 23-12601, 2024 WL 5244786, at *6 (11th Cir. Dec. 30, 2024) (citing *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1321 (11th Cir. 2018)). The circumstances of this case thus differ drastically from Rule B cases where there would have been general jurisdiction over the defendant. *Cf. Cockett Marine Oil US, Inc. v. Bravo Glob.*

*Supply LLC*, No. A-24-CV-1440-ML, 2025 WL 2612735, at *5 (W.D. Tex. Apr. 22, 2025) (holding that district court in Texas had general jurisdiction over limited liability company where company was originally formed under the laws of Texas, conducted business in Texas for five years while registered to do business there, entered into contracts in Texas, had received service from Texas's secretary of state, and had a registered agent and offices on file in Texas at the time the complaint was filed). Without evidence of similar contacts, I conclude that reasonable grounds existed at the time of attachment for Plaintiff to believe that South Florida was not Defendant's principal place of business for purposes of general jurisdiction.

Still, Defendant stresses that its activities in South Florida are substantial and relate to its sole asset, the vessel. [DE 17] at 5-6. Defendant explains that it maintains the vessel in Florida, contracts third parties in South Florida for vessel-related work, conducts business related to supplying, staffing, and managing the vessel in South Florida, and designates a South Florida company for notice. [DE 17] at 5-6; [DE 17-3] ¶¶ 3-11.

Although these activities are not insubstantial, there are still two problems. First, the record only really reflects Defendant's activities in South Florida for a brief period in 2026, not before. *See* [DE 17-3] ¶¶ 4, 6. The discussion of activities before 2026 is very limited. *See* [DE 17-3] ¶¶ 3-11. Some business activity in 2026 cannot overcome Plaintiff's reasonable belief that Defendant was not subject to general jurisdiction in South Florida. In addition to observing Defendant's foreign incorporation, foreign principal address, and lack of registration to do business in Florida or a registered agent for service of process in the state, Plaintiff's counsel also researched where Bobby Genovese, Defendant's sole director, resides. [DE 20-1] ¶ 10; [DE 17-3] ¶ 1. Information published by Genovese indicated that he maintains his residence in the Bahamas. [DE 20-1] ¶ 10. Other businesses operated by Genovese appeared to Plaintiff's counsel to be headquartered in the

Bahamas as well. *Id.* ¶ 11. None of these facts suggests that Defendant is at home in Florida for purposes of general jurisdiction. Second, courts have often rejected assertions of general jurisdiction even where a corporation has engaged in substantial activity in the forum. *See Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014) (rejecting idea that general jurisdiction exists in all forums where a corporation "engages in a substantial, continuous, and systematic course of business" and stating that such a formulation was "unacceptably grasping").

A third basis for general jurisdiction would be an "exceptional case." Though, based on the other facts known to Plaintiff at the time of attachment, Plaintiff had reasonable grounds to believe that the circumstances here did not constitute an exceptional case. Defendant's contacts in this case are more akin to the foreign corporation's forum contacts in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). In that case, the Supreme Court held that general jurisdiction did not exist over a foreign corporation sued in Texas. *Id.* The corporation owned and operated a helicopter that had crashed in another country. *Id.* Similar to Defendant, the foreign corporation in *Helicopteros* had no formal place of business in the forum and was not licensed to do business there. *See id.* It was not enough for general jurisdiction purposes that the corporation sent its chief executive officer to the forum for a contract-negotiation session, accepted checks drawn on a bank in the forum, purchased helicopters, equipment, and training services in the forum, and sent personnel to the forum for training. *Id.* Defendant's similar business activities here are insufficient for it to have been clear to Plaintiff at the time of attachment that the Court had general personal jurisdiction over Defendant.

Plaintiff has therefore carried its burden to show that it had reasonable grounds to believe, at the time of the attachment, that Defendant could not be found in the district for purposes of personal jurisdiction.

## II. SERVICE OF PROCESS[4]

Defendant argues that Plaintiff cannot meet its burden under the second prong because Plaintiff could have served Defendant by serving process on either the captain, the entity designated for notice to Defendant under the charter agreement, or Defendant's own counsel, all of which are in South Florida. *See* [DE 17] at 4, 6-8. Plaintiff responds that service on these parties would not have bound Defendant. *See* [DE 20] at 5-11. I agree with Plaintiff and conclude that reasonable grounds existed at the time of attachment for Plaintiff to believe that Defendant could not be found within the district for service of process.

Rule 4(h) of the Federal Rules of Civil Procedure governs service of a foreign corporation, providing two ways in which service in a judicial district of the United States must be accomplished absent a contrary federal law or waiver of service. *See* Fed. R. Civ. P. 4(h)(1). "First, service may be effected by following the state law regarding service of a foreign corporation in the jurisdiction where the district court is located or where service has been made." *Aguila v. RQM+ LLC*, No. 23-24702-CIV, 2025 WL 2322438, at *5 (S.D. Fla. Aug. 12, 2025) (citing Fed. R. Civ. P. 4(e)(1), (h)(1)(A)). Second, service may be effected "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B). Defendant does not argue that Plaintiff could have served it under state law. *See* [DE 17] at 7-8.

---

[4] Defendant separately argues that Plaintiff has not met its burden because the initial affidavit submitted by Plaintiff's counsel, which certified that Plaintiff's counsel performed a diligent search, was dated around two years prior to the issuance of the attachment. *See* [DE 17] at 6-7; *see also* [DE 4-4] at 2 (showing June 19, 2024, as date of affidavit rather than June 19, 2026, which was the date of filing). However, Plaintiff's counsel clarified in another sworn statement that the date being off by two years was a scrivener's error and that the diligent search occurred shortly before attachment. [DE 20-1] ¶¶ 3-7. The notary book attached to this second sworn statement, [DE 20-1] at 6, and the fact that the parties' charter agreement was not entered into until December 2025, supports the representation that the 2024 date was, indeed, a scrivener's error.

Defendant instead asserts that Plaintiff could have served it under Rule 4(h)(1)(B) through either the captain of the vessel, the company designated for notice in the charter agreement, or Defendant's counsel. *See id.* Although the record indicates that these supposed agents were within the district, none of these avenues for service clearly indicate that, at the time of attachment, service on these parties would bind Defendant.

Starting with the captain of the vessel, reasonable grounds existed at the time of attachment for Plaintiff to believe that attempting service through him would not bind Defendant. At the hearing, Defendant asserted that the captain could have been served because he was a managing or general agent under Rule 4(h). "Although the Federal Rules of Civil Procedure do not define the term 'managing or general agent,' federal courts have explained that the term 'does not refer simply to any agent of the corporation, but rather it connotes one who operates at the corporation's highest levels, or at least has overall authority to make high-level decisions on the part of the corporation.'" *Ryder Truck Rental, Inc. v. All Ways Auto Transp., LLC*, No. 24-CV-24615, 2025 WL 1257740, at *2 (S.D. Fla. Apr. 30, 2025) (quoting *Estes Express Lines v. Coverlex, Inc.*, No. 19-CV-467, 2021 WL 3712965, at *3 (M.D. Fla. Aug. 3, 2021), *report & recommendation adopted*, 2021 WL 3709639 (M.D. Fla. Aug. 20, 2021)). According to Defendant, the captain counts as a managing or general agent because the captain is the person placed in charge of Defendant's sole asset and the business affairs of the asset. *See* [DE 17] at 7. Defendant relies on two cases, both of which are non-binding and distinguishable. *See id.* at 7-8 (first quoting *Alan, Sean & Koule, Inc. v. S/V Corsta V*, 286 F. Supp. 2d 1367, 1374 (S.D. Ga. 2003); and then citing *Neset v. Christensen*, 92 F. Supp. 78, 83 (E.D.N.Y. 1950)).

*Alan* dealt with whether statements by former captains could bind the owner of a vessel under general agency-law principles. 286 F. Supp. 2d at 1373-75. Former captains had admitted

that the plaintiff in *Alan* should have been paid in full for the repair work done to the vessel. *Id.* The court explained that under the general rules of agency law, the vessel owner could only be bound by statements made by the former captains before the plaintiff knew of the captains' termination of employment. *Id.* The case did not address whether a captain is a managing or general agent under Rule 4(h). *See id.*

*Neset* did deal with service on a captain, but critical distinctions exist. *See* 92 F. Supp. at 82-83. In *Neset*, the district court held that service of process on a vessel's captain was sufficient to confer jurisdiction over the Norwegian corporation that owned the vessel. *Id.* at 83. The plaintiff, a Norwegian seaman that resided in New York, had sued for damages stemming from personal injuries sustained while working on a vessel at sea. *Id.* at 80. The plaintiff argued that the captain was a "managing agent" of the Norwegian corporation for purposes of Rule 4. *Id.* at 82. Although the court concluded that service on the captain was sufficient, the district court had explained that the captain was employed by the foreign corporation and that "there [was] nothing . . . to negate the usual authority in the master to act for the owner." *Id.* at 80, 82-83. The district court also stressed that its conclusion would "result in substantial justice to the parties," as the alternative ruling would have required the plaintiff to go litigate in Norway. *Id.* at 83. The plaintiff would also have had to get witnesses (presumably other crewmembers) to Norway, even though none of the ports of call for the vessel included a Norwegian port. *Id.*

At most, *Neset* stands for the proposition that a captain may be a managing or general agent under some circumstances. *See id.* It does not mean that a captain is automatically a managing agent for purposes of Rule 4(h) just because they are placed in charge of a foreign corporation's only asset. *See id.*; *see also Ganpat v. E. Pac. Shipping, PTE. LTD.*, 434 F. Supp. 3d 441, 460 (E.D. La. 2020) (discussing and distinguishing *Neset* to hold that "Captain Bona does not qualify

as a managing agent of Eastern Pacific"). Unlike the captain in *Neset*, who was alleged to be employed by the foreign corporation, 92 F. Supp. at 80, the captain of the at-issue vessel is not an employee of Defendant, [DE 20-1] ¶ 1.1, at 10 (listing separate entity as employer). Moreover, whereas nothing in the record in *Neset* "negate[d] the usual authority in the master to act for the owner," 92 F. Supp. at 82, the captain's employment agreement in this case expressly limits his authority to bind the owner, *see* [DE 20-1] ¶ 3.8.4, at 18. The employment agreement states that "[t]he **Captain** shall not, have any right or power to bind . . . the Ship Owner to any engagement, obligation or contract without first consulting with . . . the Ship Owner as is appropriate to the circumstances."). Even if Plaintiff did not have access to the employment agreement at the time it sought attachment under Rule B, that would only underscore the point: it is unclear whether service on a captain would be sufficient just because a captain may sometimes be a managing or general agent under Rule 4(h). *See Transamerica Leasing Inc. v. Amazonica*, No. 97-0556-CB-S, 1997 WL 834554, at *3 (S.D. Ala. June 26, 1997) ("[M]ere knowledge that a shipowner has an agent is not tantamount to knowledge that service of process on the agent would be effective."). Lastly, the *Neset* court's discussion of equitable factors to reach a conclusion that resulted in "substantial justice" suggests that the case is limited to its facts. *See* 92 F. Supp. at 83.

In short, at the time it sought attachment, Plaintiff had reasonable grounds to believe that service on the captain of the vessel would not be effective.

Turning next to the company designated for notice in the charter agreement, Defendant argues that Plaintiff could have served Defendant at a Fort Lauderdale address designated for "[a]ny notice given or required to be given by any party" to the charter agreement. [DE 17-1] ¶ 25, at 10. The Fort Lauderdale address for notice under the charter agreement is the address of a separate entity, Aquazeal LLC ("Aquazeal"). *See id.* at 2. Aquazeal is defined as a stakeholder

under the charter agreement. *Id.* The definition for "STAKEHOLDER" explains Aquazeal's role and places limits on its authority:

> An agent, named on Page One of this Agreement and appointed in accordance with industry-accepted procedures, that shall receive, hold, and disburse funds from the Instalments, the Security Deposit and any other payments made by the Parties to this Agreement. The Stakeholder shall hold all funds received in escrow in a designated bank account in the currency of this Agreement and make disbursements only in accordance with the terms of this Agreement or upon receipt of mutually agreed written instructions from the Parties. *The Stakeholder shall not have independent authority to act otherwise*.

*Id.* at 8 (emphasis added).

The designation of Aquazeal for notice under the charter agreement does not mean that attempting service on Defendant by serving Aquazeal would have bound Defendant. Simply put, being designated as an agent for "notice" is not the same thing as being designated as an authorized agent for "service" under Rule 4(h). As Plaintiff points out, it had already given "notice" to Defendant, which is why counsel for both parties had prior communications with each other. *See* [DE 20] at 10-11. Moreover, any supposed authority of Aquazeal to accept service for Defendant is muddied by the limitation placed on Aquazeal when defining it as "STAKEHOLDER" in the charter agreement. [DE 17-1] at 8 ("The Stakeholder shall not have independent authority to act otherwise."). Plaintiff thus had reasonable grounds to believe that, at the time of attachment, service of process on Aquazeal would not bind Defendant.

Lastly, Defendant argues that Plaintiff could have served Defendant through Defendant's counsel, with whom Plaintiff had been in contact prior to seeking Rule B attachment. [DE 17] at 8. According to Defendant, Plaintiff's obligation under Rule B to perform a diligent search means that Plaintiff should have asked Defendant's counsel whether counsel could accept service for Defendant, at least under the circumstances of this case. The Court disagrees. Generally, "service of process is not effectual on an attorney solely by reason of his capacity as attorney." *Ransom v.*

*Brennan*, 437 F.2d 513, 518 (5th Cir. 1971)[5] (citation omitted); *Hadden v. Univ. Acct. Servs.*, No. 18-81385-CIV, 2020 WL 607112, at *2 (S.D. Fla. Feb. 7, 2020) (quoting *Durbin Paper Stock Co. v. Hossain*, 97 F.R.D. 639, 639 (S.D. Fla. 1982))). Instead, "[t]he party must have appointed his attorney as his agent for service of process before personal jurisdiction is obtained over the party by service on his attorney." *Hadden*, 2020 WL 607112, at *2 (quoting *Durbin*, 97 F.R.D. at 639). No submitted evidence suggests that, at the time of attachment, Defendant had taken the affirmative step of appointing Defendant's counsel as an agent for purposes of service of process.

Although Defendant argues that Plaintiff should have asked whether Defendant's counsel would accept service, Defendant's Motion points to no cases enforcing a similar requirement before pursuing attachment under Rule B. *See* [DE 17] at 8. The Court is reluctant to subscribe to a view that, applied more broadly, could undermine a plaintiff's ability to obtain personal jurisdiction over a defendant in the Rule B context. *See, e.g.*, *Ital Brokers*, 2024 WL 4880513, at *2 ("Under Supplemental Rule B, *in personam* jurisdiction over the defendant is obtained by compelling its appearance through attachment of its goods and chattels, or credits and effects." (quoting *Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1351 (M.D. Fla. 2001))). Asking whether counsel would accept service could tip off a would-be defendant and motivate them to take moveable property (like a vessel) out of the district before attachment under Rule B can occur. Defendant argued at the hearing that this hypothetical is different from the facts in this case because the vessel at issue was not going anywhere, but the general principle stands. The Court will not import an obligation to ask defense counsel whether they can accept service into a Plaintiff's existing obligation to perform a diligent search before

[5] "All Fifth Circuit decisions issued before October 1, 1981, are binding precedent in this Court." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1226 n.3 (11th Cir. 2024) (citing *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc)).

pursuing Rule B attachment, especially without a clear basis to do so. Consequently, it was not clear at the time of attachment that Defendant could be found in the district for service of process purely because Defendant retained counsel in the district that had been in communication with Plaintiff's counsel.

Because it was not clear at the time of attachment whether serving the captain, Aquazeal, or Defendant's counsel would have bound Defendant, I conclude that Plaintiff had reasonable grounds to believe Defendant could not be found in the district for service of process.

**CONCLUSION**

Plaintiff has established that it had reasonable grounds to believe that Defendant could not have been found within the district for purposes of either personal jurisdiction or service of process. Therefore, it is **ORDERED and ADJUDGED** that the Motion [DE 17] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 16th day of August 2026.

Jared Strauss

**Jared M. Strauss**
**United States Magistrate Judge**